Final case for argument is 23-1726, Ocean Semiconductor v. Applied Materials. The case for argument is 23-1726,  Ocean Semiconductor v. Applied Materials. Good morning, your honors. I'm Joseph Zito from the Devlin Law Firm here on behalf of the petitioner on a patent from Advanced Microdevices. We have four distinct bases upon which we've asked for either reversal or remand, but I'm going to give some background and then explain how these four bases interact with each other for which we should have reversal or remand. First, starting out with the patent at issue, it's a method and an apparatus providing fault detection in an advanced process control framework, an APC framework, which is mentioned throughout the brief. This framework existed, but this patent improved the way an APC framework could be used to control a process. The process is the fabrication of a chip through the many steps that the process goes through. It's the entire system. And as the board found, the process did, or the patent did receive secondary considerations because of the widespread acceptance. And the board recognized that but gave it not as much weight as we think it should have. Part of the reason why it didn't give it the appropriate weight, we believe, is the board did not consider that this is considered other ways to advance processing. Are you asking us to re-weigh the considered weight? Yes. One of the four bases is it. So you're asking us to re-weigh the evidence and to see if the board was correct or not. Correct. We think that it should have been given greater weight. We can't do that, right? We're not fact finders. Well, you can review facts for clearly erroneous, but you're not fact finders. But the reason why this relates to... That's not going to be a winning argument for you, okay? Which is why it's our fourth argument. And the reason why it's related... We should strike it because we're not fact finders. We're not going to re-weigh the evidence that the board heard. Our typical standard to review in these cases is whether the board decision is supported by substantial evidence. The weight it's given, without re-weighing it, is relevant because it relates to the improvement in an APC, which was not disclosed in either of the references. As the petition itself says, and it's repeated on page 14 of our opening brief, Cornell, the primary reference, lacks numerous components. A fault detection unit, a data collection unit, accumulating state data, translating, sending state data, performing the predetermined action. So all of those, according to the petition itself, are lacking for Cornell. Cornell, the primary reference, relates to gathering vast quantities of data about a chip as it goes through the entire process, and then making determinations about subsequent chips and subsequent processing to have greater acceptable output. It lacks, again, according to the petition, all of those elements, which we have contended are not provided by FOX. FOX doesn't teach an advanced process control framework, and that's the third argument, which is where we proved by cross-examination of their expert that not all of the elements are taught in the two combined references. This is the part the board found was waived, right? Right, and we're reviewing that for abuse of discretion? Correct. And I guess the question I have is, why did you wait to depose the other side's expert until after the petitioner filed its reply? Why didn't you depose the person much earlier so that anything you learned from any such deposition could have been included in your patent owner's response rather than having to delay it and then try to present it in a CER reply? Because additional issues were raised in the reply to the patent owner's response that prompted the need to take the deposition, and those were the issues. I mean, it seems to me this whole question of what does an APC require, what are the elements of an APC, that could have been ferreted out earlier to make this particular argument that you did not raise until your CER reply. Right, and we raised that issue, we had that discussion before the board, and the board, in their discretion, allowed us to take the deposition of the expert. Right, but then it also issued a warning, did it not, that be very careful. We're going to allow you to depose this individual, but be very clear that you cannot all of a sudden then introduce new arguments that could have been raised earlier. That's correct. And then it concluded the CER reply in fact did that, and so that's why it barred you from relying on various statements from the deposition. That's procedurally correct, we believe that procedure was in error, that we did not raise new issues. We raised issues that were raised in the responsive brief, not issues that could have been raised in our original petitioner, patent owner's brief. It's still unclear why you waited so long to try to depose the other side's expert. Traditionally, it happens much sooner in the process. That's correct. So I don't understand what took so long. Without getting into privileged decision making, it's difficult to answer that question. But the issue became apparent after the petitioner's brief in reply to a patent owner's brief. The issue became apparent that the expert was not reading an APC as it properly should have been, based upon the arguments that were presented in the responsive brief. And that's when it became apparent that we should take the deposition and find out what the expert meant when he said APC in the report, which we thought was the same thing as an APC, but in the reply brief they said it was not, it was something different. And that's what raised the issue where we wanted to ferret that out by taking the deposition. That's how it occurred. And again, that's the third basis. I think the first two bases are the strongest ones, which are that you can't combine Fox with Cornell, because they teach the opposite things. Cornell is missing a number of elements, because Cornell does not do the evaluation and data gathering needed for an APC to control the process. Cornell does lots of data gathering on the overall chip manufacturing to make improvements in the chip manufacturing. Fox also doesn't gather that data. Fox, as we argued in our brief, takes 11 factors, combines them into, using a telling T-squared statistical analysis, converts them into one number. And those are 11 factors that are in the forge in one step of the process of making a chip. They are gas pressure, temperature, a lot of factors that are then put into a statistical analysis that come up with one number. Fox then teaches changing each of those parameters minutely until the number comes back within range. It doesn't teach analyzing whether or not the chip was manufactured properly. It doesn't teach, it doesn't gather any of the data that hotelling needs. All it does is make one step in the overall process, one portion of the overall process in one machine of a series of machines operate a little better and a little more optimally by doing a real-time adjustment of many factors and not having to look at all 11 at the same time, reducing it to one. Whereas the opposite is taught in Cornell, where you want to gather as much data as you can, look at all that overall data to make very detailed decisions about the entire process of manufacturing chips. But I give the context of cross is for advanced process control. And it was found to have secondary considerations, although they were moderate. Doesn't Cornell operate to provide defect data in the production process at many different stages of the process itself? Correct. But it does that, reading from the abstract of Cornell, the technique allows a total clusterized wafer fabrication process and prevents wafer rejection. It doesn't reject the wafers. What cross talks about is stopping, if there's a problem, the APC can now, which controls the entire process... So you don't want to reject wafers. You want to save them. I mean, that's what this is about. Correct. It's about improving the process so that you have better production. Less rejection. They are both in the same area of technology. We don't deny that. What the argument is, is that cross only teaches how to optimize one particular piece of equipment by taking 11 factors, reducing them to one, changing the parameters, and getting that one resultant statistical number in range so you can continue going. And Fox says that's advantageous to do that. Say again? Fox says it's advantageous to convert all of this data you vacuum up and then run this multivariate analysis in order to come up with the T2 calculation. And so the idea is, because it's advantageous, you would likewise do it in other circumstances where you're vacuuming up a lot of data and you're comparing that data to a bunch of stored data for fault detection and a semiconductor processing. Yes. So in that way, that's why the multivariate analysis of Fox lends itself to the Cornell process. It does if Cornell wanted to gather up a bunch of data, reduce it to a parameter, and move on. Cornell wants to do the opposite of that. Cornell is, again, it does not want to inject any wafers. The patent in suit rejects wafers, and it does it quickly. The APC looks at the entire system and all the machines, and if one machine is not operating properly, rejects the wafers from that machine, doesn't send them to the next machine, shuts that machine down, and makes the whole system work. Cornell waits until the wafers go all the way through the machine, looks at the rejection of sections of the wafer in minute detail, and then determines what we should change in the process the next time to get even better yield. It doesn't reject wafers or shut down machines. Fox doesn't shut down machines or reject wafers. It looks at a bunch of parameters in one operation and makes minute adjustments. I thought Fox interrupts undesirable processing through its fault detection. No, it readjusts. Again, reading from just the abstract, the algorithm calculates the T-squared value, which is then used to generate a feedback signal. If the T-squared value is out of range to indicate out-of-tolerance condition, it then goes on to change all of the 11 parameters to get the T-squared value back into tolerance and continue the processing. It doesn't reject the wafers. Fox teaches an advantageous process that could help anyone making chips, but it doesn't flow into, and that's the reason you don't combine it, because that advantage doesn't flow into the purpose of Cornell. It could help in one step at Cornell, but it doesn't flow into the purpose of Cornell. And that's what you need to be able to combine the two references, that you're helping Cornell achieve what's in the patent, and you're not. You might help Cornell process one process better, but you're not helping it identify chips that are out of tolerance and rejecting those and closing down machines in an overall system. So Fox can't help Cornell do that, and as a petition admits, Cornell is missing many of the steps, many of the pieces of the system necessary to do that. So the non-combination, not only do they teach away from each other, gather lots of data, reduce it to simple data, adding the two together still would not accomplish the missing pieces. It would simply make, possibly make one step operate a little more efficiently by not having to reject as many. This patent's already expired, is that right? Yes. One minute left. Thank you. Good morning, your honors. May it please the court, my name is Jennifer Nock on behalf of the College of Applied Materials. In a thorough and carefully considered final written decision, the board correctly concluded that the combination of Cornell and Fox renders every challenge claim obvious. And Ocean Semiconductor's appeal relies on an improper, narrow view of obviousness and motivation to combine that is directly contrary to KSR in this court's precedent. Ocean improperly asks this court to reweigh evidence that the board thoroughly considered and relies on arguments that were waived and are not supported by the record. So we respectfully request that the board's decision be affirmed. I'll turn to motivation to combine. The board thoroughly addressed the motivations to combine Cornell and Fox at appendix pages 16 through 20. That analysis is well grounded in the evidence and the law. As the court has recognized, Fox teaches that the T squared value, its statistical analysis, allows for improvement and it's a way of handling the vast amounts of data that are being collected by systems like Cornell and Fox itself. They're both doing fault detection in a semiconductor process in the same type of tool as one another. The board found that there was ample motivation to combine and that these processes were compatible and were directly, it was easy to improve Cornell using Fox's methods. Strikingly, Ocean's briefs cite to counsel's oral argument in front of the board. There's no record evidence supporting that there was any problem or that a POSA would have difficulty combining the Fox method with Cornell. There's simply no record evidence to support the arguments that counsel is making today to this court. In contrast, Dr. Hatalis' testimony at appendix pages 880 to 881 discusses and explains how a POSA would have been motivated to use Fox's multivariate analysis to improve the Cornell system. And the board's analysis goes through and demonstrates that that combination of Fox and Cornell meets every element of the challenge claims. As to the APC framework, again, substantial evidence supports the board's finding that Cornell teaches the claimed APC framework. An APC framework was a known standard component and the arguments that Ocean Semiconductor makes on appeal were raised only for the first time in a cert reply. They're essentially untimely claim construction arguments about what does it mean to have an APC framework. And there's simply no reason that that argument, if it had been based in evidence, that those arguments could have been made in the patent owner response. I think the fact that they weren't made in that context shows how weak those arguments are. And in fact, many of them would contradict the teachings of the 402 patent itself. So there's no abusive discretion in excluding Ocean's late cert reply arguments. Council touched on the weighing of the objective evidence of non-obviousness. As the court has recognized, Ocean is simply improperly asking this court to re-weigh the evidence and to assign undue importance to what the board found was an ambiguous teaching in an article from 1997 that just simply did not outweigh the extensive evidence of obviousness that was set forth in the petition and in the testimony of Dr. Hattalas. Do we have cases that say that's a question of fact, the weighing, or whether it's a question of law? Your Honor, at page 49 of the red brief, we cited the In Re Warsaw Orthopedic case, which states we do not re-weigh the evidence on appeal, but rather determine whether substantial evidence supports the board's fact findings. In Re Gartside, cited at page 44 in the red brief, says the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. I guess in the end, when it comes to this secondary consideration argument, what it boils down to is did the board make a reasonable reading of that long passage in that one article, and what was that one article trying to get at when it was talking about protocols and standards, or something like that, right? Exactly, Your Honor. And at most, Ocean has presented what we think is an implausible reading, but an alternative reading of that passage. The board dug into all of the details and is acting as the fact finder. If we think the board has a reasonable reading of that long passage, then that's the end of that issue. Exactly, Your Honor. If there are any further questions, otherwise I will cede the rest of my time. Thank you. Thank you. I just go back to the two major points we make, that Cornell, in the petition, misses many elements. Fox does not satisfy those elements. In addition, Fox should not properly be rejected. They are very different references in where one collects as much data as possible to make an overall analysis to change what is done in the entire process to make less rejection of chips, because that's good. And Fox is directed towards reducing the amount of data that's collected into a single statistical number, not to make overall changes to the process, but to change those 11 parameters that it's gathering in real time to adjust the statistical number to be within range. So they're not the same objective. They're opposite objectives. One is collect more data to make much overall greater decisions. The other is to reduce the data to a statistical number to make immediate changes. Thank you. We thank both sides. The case is submitted. That concludes our proceedings.